[Sac. No. 2134.   Department One.—April 17, 1915.]

## J. A. McRAE, Appellant, v. ALBERT T. ROSS et al., Respondents.

CONTRACT FOR SALE OF LAND—ACTION FOR BREACH—AUTHORIZATION TO AGENT—FINDINGS SUPPORTING JUDGMENT FOR DEFENDANT—EVIDENCE.—In an action to recover damages for the breach of an alleged contract authorizing the plaintiff to sell certain land as the agent of the defendant, and also for the breach of a contract to sell the land to the plaintiff, the judgment in favor of the defendant is sustained by findings against the existence of the contracts and authorizations set up in the complaint, and determining that the plaintiff did not produce a purchaser, or accept any offer of the defendants to sell the property to him, and that the defendant was not indebted to him in any sum. The failure to find on other issues is immaterial, and the evidence is held sufficient to sustain such findings.

ID.—SPECIFIC PERFORMANCE—PLEADING—FAIRNESS—ADEQUACY OF CONSIDERATION.—A complaint for the specific performance of a contract to sell land fails to state a cause of action if it omits to aver facts

showing the fairness of the contract or the adequacy of the consideration.

Id.—Rejection of Offer Contained in Letter—Counter Offer.—Where a letter contains an offer to sell land at a specified price, an answer offering a less price is a rejection of offer contained in the first letter.

Id.—Contract for Sale of Land Must be in Writing—Authorization to Broker.—A contract for the sale of real estate, or for the employment of a broker to sell real estate, must be in writing.

Id.—Authorization to Agent to Make Contract for Sale—Estoppel by Oral Authorization.—An authorization to an agent empowering him to make a contract on behalf of the principal to sell real estate or employ an agent to sell it, must be in writing. The principal is not estopped to deny the sufficiency of a parol authorization.

Id.—Intending Purchaser Must be Able to Purchase to Entitle Broker to Commission.—A broker who seeks a commission for a sale must show that he has produced a purchaser not only ready and willing but also able to purchase on the terms authorized.

Id.—Breach of Contract to Sell—Measure of Damages—Judgment for Seller.—In the absence of bad faith, the measure of damages for the seller's breach of a contract to convey land is the price paid, and expenses properly incurred in examining the title and preparing the necessary papers. In an action to recover for such breach, no damage is suffered, and judgment is properly rendered for the defendant, if no price had been paid and no expense incurred by the purchaser.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

McCoy & Gans, and H. P. Andrews, for Appellant.

Arthur C. Huston, and F. F. Marshall, for Respondents.

SLOSS, J.—Plaintiff appeals from a judgment in favor of defendants, and from an order denying his motion for a new trial.

The complaint is in four counts. The first alleges the ownership by defendants of a ranch in Solano County, containing 521.65 acres; alleges that in 1910, said defendants offered to sell said ranch to plaintiff, or to any one designated by

him, for forty-one thousand dollars, and agreed that, in case
of a sale to another, plaintiff was to have all of the price
above forty-one thousand dollars; that in December, 1910,
plaintiff secured a purchaser, who agreed with defendants
to purchase the ranch for $62,468.87; and that nothing has
been paid plaintiff. The second cause of action alleges that
defendants placed the ranch in plaintiff's hands for sale, and
authorized him to sell it for forty-one thousand dollars, agree-
ing that he was to receive as commission the purchase price
above forty-one thousand dollars; that a sale had been ar-
ranged through plaintiff for $62,468.87, and that no part of
the excess over forty-one thousand dollars had been paid.
The third count is based on the theory that plaintiff himself
purchased the ranch for forty-one thousand dollars, but that
defendants, acting in bad faith, refused to sell to him. The
value of the ranch is alleged to be $62,468.87, and the differ-
ence between that sum and forty-one thousand dollars is
claimed as damages. The fourth count attempts to set up
a cause of action for specific performance of the contract to
sell to plaintiff for forty-one thousand dollars. The answer
denies most of the allegations of the complaint. The court
found against the existence of the contract and authorization
set up in the complaint, found that plaintiff did not produce
a purchaser, or accept any offer of defendants to sell the
property to him, and that defendants are not indebted to
plaintiff in any sum. Judgment went in favor of defendants
for their costs.

The findings above outlined are sufficient to sustain the
judgment so far as the prayer for a money judgment is con-
cerned. Whether or not the court failed, as appellant claims,
to find on other issues, is therefore entirely immaterial. The
fourth count demands no particular attention. It failed to
state a cause of action, there being no averment of facts show-
ing the fairness of the contract or the adequacy of the con-
sideration. This pleading would not have supported a decree
of specific performance. (*White* v. *Sage,* 149 Cal. 613, [87
Pac. 193], and cases cited.)

No errors in rulings on evidence are assigned. The appel-
lant claims, merely, that the evidence does not support the
findings of the court.

It is clear that the findings in favor of the defendants Ray-
mond H. Ross, Mabel I. Ross, and Mrs. Henry are in accord

with the undisputed evidence. A contract for the sale of real estate, or for the employment of a broker to sell real estate, must be in writing. (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973.) None of these three defendants ever made any written contract with plaintiff or even had any written communication with him. Plaintiff attempted to show that each of them had referred him to a brother, their codefendant, Albert T. Ross, as the person in charge of the ranch. But the testimony was that Albert did not have any written authority to bind them, and this was necessary to empower him to make a contract, on their behalf, to sell real estate or employ an agent to sell it. (Civ. Code, sec. 2309.) Even if the making of the oral statements had been shown without contradiction—which is not the case—such statements would not have bound these defendants. There is no ground for the contention that the alleged declarations raised an estoppel against the three defendants. To so hold would destroy the statutory requirement that authority to sell real property must be in writing.

The remaining question is whether the findings in favor of defendant Albert T. Ross are supported. The evidence in this behalf is quite voluminous and we shall not undertake to recite it in detail. Read as a whole, it presents the very usual aspect of a substantial conflict, which puts the finding of the trial court beyond the power of appellate review. The testimony on behalf of defendants tended to show, and justified the trial court in believing this to be the state of facts. In August, 1910, Albert T. Ross had written to plaintiff, telling him that the ranch was for sale for forty-one thousand dollars, and that, if he got a chance to sell it, he should charge a good price "so you can get a commission out of it, as my figures are net." Nothing came of this, and some months later McRae wrote to A. T. Ross, offering thirty-six thousand dollars for the land. This was, of course, a rejection of any offer contained in the August letter, and ended that offer. (*Niles* v. *Hancock,* 140 Cal 157, [73 Pac. 840].) On November 1, 1910, Ross answered McRae's letter, saying, "We all feel that the ranch is worth what we are asking. . . . I don't feel as if we can take $40,000, but will take $41,000, that is if it is sold before the alfalfa is up. . . . We thank you for your offer. Am willing to answer any question about the place any time you should wish to write." This is the only

writing which plaintiff can look to as supporting his cause of action. Following its receipt, McRae brought one or two people to see the property, but there was no result from these efforts except in the case of one Reed, who finally made a contract with the defendants to buy the ranch for $61,117.50. But this was a contract under which nothing was to be paid until October 1, 1911, about nine months after the making of the agreement. Assuming that the letter of November 1, 1910, authorized McRae to make a sale, it did not authorize a sale on the terms that were subsequently agreed upon between Reed and Ross. Reed testified that when he made his offer for the property, he was not in a position to pay for it. A broker who seeks a commission for a sale must show that he has produced a purchaser, ready, *able,* and willing to purchase on the terms authorized. (*Gunn* v. *Bank of California,* 99 Cal. 349, [33 Pac. 1105].) This the plaintiff did not do. Furthermore, there was testimony to the effect that McRae, instead of facilitating a sale to Reed, endeavored to prevent an agreement between Reed and Ross.

Of the contention that McRae himself purchased the property, it is enough to say that the court found, with respect to the third count, that defendants did not act in bad faith in violating the alleged contract, and that plaintiff suffered no damage. These findings are sufficient to support the judgment in favor of defendants on this count. Assuming that there was a contract, and that it was broken, the measure of damages, in the absence of bad faith, is "the price paid, and expenses properly incurred in examining the title and preparing the necessary papers." (Civ. Code, sec. 3306.) No price had been paid by plaintiff, nor did he show the incurring of any expenses. The finding of a want of bad faith was fully justified, and it follows that the alleged breach caused no damage. Aside from all other considerations, the plaintiff was properly denied relief on this count.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, C. J., concurred.