[Civ. No. 7887. Third Dist. July 26, 1951.]

H. J. BAKER, Respondent, v. E. J. CURTIS, Appellant.

Ray W. Hays for Appellant.

C. Ray Robinson and James Cobey for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and respondent commenced an action to recover a broker's commission of $2,500 on the sale of a 1,080-acre ranch in Mariposa County. The jury's verdict was in favor of plaintiff and this appeal is from the judgment entered on such verdict.

In arguing for a reversal of the judgment defendant and appellant makes two main contentions: 1. That at the time of the sale there was no valid contract between the parties; and, 2. That the court erred in its instructions to the jury.

We shall first summarize briefly the factual situation as disclosed by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences must be indulged in to support the judgment.

On April 21, 1947, appellant listed his ranch with respondent, a real estate broker with an office in Merced, respondent's authority being evidenced by an agreement in writing, which so far as material here, reads as follows:

"Authority to Sell. In consideration of the services of H. J. Baker hereinafter called the agent, I hereby list with said agent, exclusively and irrevocably, for a period of 30 days from date hereof, the following described property, situated in the County of Mariposa, State of California, to-wit: 1080 acres located in White Rock district known as Walter Hickey Place, and I hereby grant said agent the exclusive and irrevocable right to sell the same within said time for Fifty-eight thousand & no/100 ($58,000.00) Dollars and to accept a deposit thereon.

"Terms cash or terms to suit seller.

"I hereby agree to pay said agent as commission 5% of the selling price herein named whether said property is sold by agent or by me or by another agent or through some other source, whether said property is transferred or conveyed or withdrawn from sale during the time set forth herein.

"In case a sale is made within 30 days after the termination of this listing to parties with whom said agent negotiated during its life and said agent notifies me personally or by mail, in writing, of such negotiation, I agree to pay the said agent the commission hereinabove provided."

Respondent advertised the property for sale in the local Merced newspapers and wrote letters to various cattlemen offering it for sale, but was unable to effect any sale of it during the listing period. In September, 1947, appellant told respondent, through respondent's salesman, Frank P. Montgomery, to keep the ranch on the market and respondent continued in his efforts to sell the ranch for appellant during the remainder of 1947 and the first eight months of 1948. The record shows that appellant was aware of these efforts and that he approved and encouraged them, that he told respondent to keep on trying to sell the ranch, and that he at no time requested that the listing be withdrawn. About September 8, 1948, a Thomas J. Booth came into respondent's office to inquire about a listing that had appeared in the local newspaper. He was not interested in the property that had been listed, but was informed that appellant's ranch was for sale. Booth showed that he was interested and discussed with Montgomery, respondent's salesman, ways and means of financing the purchase. Montgomery advised Booth where appellant could be located when he returned to Merced within 10 or 12 days. On September 18th Montgomery informed appellant that he had "a darn good prospect . . . by the name of Booth" and that appellant would probably be contacted by him. About September 20, 1948, Booth entered into direct negotiations with appellant for the purchase of the ranch, and on September 30, 1948, purchased it from appellant for the price of $50,000, appellant reserving the use of approximately 200 acres for the current grazing season. Respondent demanded a commission of 5 per cent of said sale price of $50,000, and upon appellant's refusal to pay same commenced this action.

Appellant first contends that "this case is governed by subsection 5 of section 1624 of the Civil Code, which provides that an agreement employing a broker to sell real estate

for compensation is invalid unless in writing subscribed by the party to be charged. It is true in this case that there was a valid original agreement, but our contention is that it had expired.'' Respondent, in reply, does not dispute the rule of law stated by appellant, but contends that the time limitation in the written agreement has been waived by appellant. In his closing brief appellant states: ''Of necessity, we must concede that under proper circumstances the stipulation as to time for performance may be waived''; but appellant argues that no waiver was shown by the facts and circumstances of the instant case.

In a very illuminating and well-considered annotation in 140 American Law Reports on ''What amounts to waiver of termination of real estate broker's contract'' it is stated at page 1020:

''. . . And where a definite time is specified for performance of the contract of brokerage, the broker is not entitled to the agreed compensation unless he achieves the result within such time, except where the principal in bad faith has prevented him from doing so (see 8 Am.Jur. 1086, Brokers, § 169). Where the termination of the contract has been waived, however, a different result may be reached, and the broker may be allowed to recover his compensation although in the absence of conduct amounting to a waiver of the contract's termination he would not have been entitled to recover because his performance occurred after the brokerage relation had been dissolved.

''In a number of instances the view has been taken that where, after the apparent termination of a brokerage agreement, the broker has continued negotiations with a prospective purchaser, or his efforts to find such a purchaser, with the knowledge and consent of the principal, the termination of the contract will, particularly where it appears that the principal accepted and retained the benefits of the broker's efforts, be considered waived.

''Thus, in *Stiewel* v. *Lally* (1909), 89 Ark. 195 [115 S.W. 1134], a suit to recover commissions for the sale of appellant's coal properties under a contract establishing a time limit for the procurance of a purchaser, it was held that the evidence was sufficient to sustain the finding of the jury that plaintiff was the procuring cause of the sale of the properties made by defendant and was consequently entitled to recover the agreed commissions. In overruling the contention that plaintiffs were not entitled to recover because the sale in ques-

tion had been made after the expiration of the time limit provided in the contract, the court pointed out that appellant knew that plaintiffs were continuing their efforts to find a purchaser after the time limit had expired and offered no objections thereto but, on the contrary, encouraged them to continue, and said: 'He [appellant] waived the time limit in the contract, and the second instruction, given to the jury at the instance of appellees, of which appellant complains, correctly stated a familiar principle of the law that a party to a contract containing a limitation as to time for performance, who induces the other party after the expiration of the time to continue in the performance of the contract, will not be permitted to withhold the fruits of the contract because it was not performed within the specified time.' "

Appellant cites a number of California cases in support of his contention. Among these is *Lisle* v. *E. B. & A. L. Stone Co.*, 103 Cal.App. 409 [284 P. 680], where the court said at page 411:

" . . . The rule is well settled that to entitle an agent to a commission he must make a sale within the time limited by his contract of agency. If he fails to do so he is not entitled to the commission even though he made efforts to sell and first caused the property to be called to the attention of the person who subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner. (*Zeimer* v. *Antisell*, 75 Cal. 509 [17 P. 642]; *Ropes* v. *John Rosenfeld's Sons*, 145 Cal. 671 [79 P. 354])."

Appellant also cites *Rice Lands etc. Co.* v. *Blevins*, 61 Cal.App. 536 [215 P. 402], and *Sweeley* v. *Gordon*, 47 Cal.App. 2d 381 [118 P.2d 14].

Appellant quotes also from *Herzog* v. *Blatt*, 80 Cal.App. 2d 340, at page 343 [180 P.2d 30]:

"Neither is there any merit in plaintiff's contention that the contract was fully performed on the part of plaintiff by defendant's sale to plaintiff's customer, and that thereby the bar of the statute of frauds was removed. The law is settled that the procurement of a purchaser is not such performance as will entitle a broker to recover a commission in the absence of a compliance with the requirements of subdivision 5, section 1624 of the Civil Code. (See *Crawford* v. *Kennedy*, 64 Cal.App. 719 [222 P. 644]; *Sweeley* v. *Gordon*, *supra* [47 Cal.App.2d 381].)"

Respondent, in reply, does not dispute the general principles stated by appellant and in the authorities cited by him. Re-

spondent, however, asserts that a party may waive both contractual and statutory provisions made for his benefit, citing section 3513 of the Civil Code, and that in the instant case the time limit in the written agreement has been waived by appellant.

Respondent argues, and we think correctly, that the factual situations in the cases cited by appellant differ from the facts of the instant case. Respondent points out that no cases have been cited by appellant in which it was held that the broker was not entitled to recover his commission, where, after the expiration of the time limit provided in a broker's contract, the broker was told by the owner to continue in his efforts to sell the ranch and that the broker did so continue with the knowledge, approval and encouragement of the owner, and that as a result of the broker's efforts the purchaser to whom the owner sold the property was produced. Respondent asserts: "The controlling facts in this case, which clearly distinguish it from the foregoing authorities, are that:

"1. There was a valid, written agreement to pay respondent a commission;

"2. The appellant not only knew of, but encouraged, respondent's continued efforts to sell the property and induced him to believe that the time limit in the written agreement was waived;

"3. The respondent procured a prospective purchaser to whom the appellant sold the property so that he accepted the benefits of respondent's services (See Civ. Code, sec. 3521).

"The Statute of Frauds in no way prohibits the waiver of a provision in a written agreement. A term or condition of any contract may be waived regardless of whether or not it is subject to the requirements of the Statute of Frauds."

Respondent has cited the annotation from 140 American Law Reports from which we have hereinbefore quoted, and has also cited a number of California cases to support his contention that the time limit was waived by respondent. Among these are *Fuller* v. *Mann,* 119 Cal.App. 568 [6 P.2d 999], where it is said at page 572: "Appellant contends that the trial court erred in denying her motion to strike out certain portions of the testimony of the respondent, which were in conflict with the terms of the original agreement. This testimony related to the waiver of the ninety day period within which the first twenty-five units were to be sold and, also, to the oral agreement between the parties to divide the seventy units.

"We think the evidence clearly shows that appellant waived

the ninety-day period within which the first twenty-five units were to be sold.

"The law is well settled that performance under such contract could be waived by appellant, who was the party entitled to performance."

Also cited by respondent is *Umphray* v. *Hufschmidt*, 73 Cal.App. 140 [238 P. 749], where the court said at page 144: "Under those circumstances it must be held that appellant waived the limitation of time fixed by respondent's contract of agency for the sale of the property."

Respondent also quotes from *Estes* v. *Hotchkiss*, 63 Cal.App. 284, 289 [218 P. 605], as follows: "It is attempted to avoid payment of the commission on the grounds that the writing of June 14, 1917, limited the right of the broker to recover his earned commission to the contingency that the principals in the transaction would consummate their contract within sixty days. This might have been true if the defendant, upon failure of the purchaser to complete the purchase within that time, had refused to go on with the transaction; but this was not the case, and the fact that he did go on with the negotiations with Estes and his associates must be held to have amounted to a waiver on his part of that condition in the broker's contract."

Appellant in his reply brief points out correctly that the factual situations in the California cases cited by respondent are somewhat different from the facts in the instant case. However, appellant concedes "that under proper circumstances the stipulation as to time for performance may be waived." The question, therefore, that we must determine is whether or not under the facts and circumstances of the instant case the time limitation in the written agreement was waived. We have hereinbefore set forth the factual situation as shown by the record, and while there may be some conflicts in the record, the implied finding of the jury must be considered as a finding of such facts.

As we construe the authorities, the time limitation stated in such a contract may be waived and where, as here, the owner, after the time limit provided in the contract had expired, urged and encouraged the broker to continue his efforts to find a purchaser for the property, and the broker did so continue with the knowledge, approval and encouragement of the owner, and, as a result of the broker's efforts, a purchaser to whom the owner sold the property was produced, under such circumstances the time limit in the written contract must be considered as having been waived and the broker

is entitled to his commission. To hold otherwise would in our opinion permit the use of the statute of frauds to perpetrate a fraud. Such a holding would not only be inequitable, but is not required or justified by either reason or authority.

In his closing brief appellant, for the first time upon this appeal, urges the point that the mere calling of the purchaser's attention to the property in the case of a real estate broker, is not sufficient to entitle the agent to compensation, and that the agency contract called for a price of $58,000 and the sale was consummated for $50,000. This point has no merit, and in the same brief appellant quotes from *Pray* v. *Anthony*, 96 Cal.App. 772 [274 P. 1024], where the court said at page 779: ''Defendant's second contention is that Mrs. Pray was not the procuring cause of the sale, but this contention is completely negatived by the evidence already set forth, for it appears therefrom that the seller and the buyer were brought together through the efforts of the broker, who had been duly employed as such; that while the contract of employment was still in force, never having been abandoned by the broker nor rescinded by the seller, the sale was consummated by the seller with the buyer the broker had procured, on terms and for a price acceptable to the seller. Under such circumstances the broker is entitled to the payment of the full commissions. (*Pryor* v. *McGuire*, 59 Cal.App. 234 [210 P. 532]; *Sessions* v. *Pacific Improvement Co.*, 57 Cal.App. 1 [206 P. 653]; *Bail* v. *Glantz*, 78 Cal.App. 49 [248 P. 258], and cases cited therein.)''

Appellant urges that the court erred in giving the following instruction: ''The fact that the property was sold for lower price by the owner, Curtis, than he had listed it with the broker, Baker, does not in itself bar Baker's right to a commission from Curtis but it does reduce the amount of that commission from $2,900.00 to $2,500.00.''

There is no merit in this contention as the instruction correctly states that if respondent was entitled to judgment he was entitled to 5 per cent commission on the purchase price of $50,000.

Appellant urges also that the court erred in giving the following instruction: ''It is alleged in this case that Baker was employed by Curtis on or about April 21, 1947, to sell the realty here involved for a commission by a written agreement to that effect signed by Curtis. Although such employment was limited by said agreement to thirty days from April 21, 1947, if you find from the evidence that notwithstand-

ing such time limitation upon Baker's employment, Baker continued in his efforts to sell the realty in question throughout 1947 and the first nine months of 1948 and that Curtis knew Baker was continuing in his efforts to sell Curtis' property and Curtis either affirmatively consented to such efforts or acquiesced in them by making no objection thereto, you may then find that Curtis waived the aforementioned time limitation upon Baker's employment and that throughout the month of September, 1948, Baker was still employed by Curtis to sell the realty in question. In this connection since the evidence shows without contradiction that Frank Montgomery was Baker's agent when I speak of Baker's efforts I mean to include those of Frank Montgomery.''

If we are correct in our interpretation of this law, as hereinbefore set forth, there is likewise no merit in this contention.

No other points raised by appellant require discussion.

In view of the foregoing, the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.