[Civ. No. 15766.   First Dist., Div. Two.   Mar. 30, 1954.]

E. K. WOOD LUMBER COMPANY et al., Plaintiffs, v. JOHN STEWART ROBERTS, Appellant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Respondents.

Frederick L. Hilger for Appellant.

Samuel B. Stewart, Jr., Christopher M. Jenks and H. H. Bechtel for Respondents.

GIBSON (Lilburn), J. pro tem.*—On January 6, 1949, cross-complainant Roberts was the owner of real property in Oakland upon which he was erecting a building. To assist him in financing construction thereof, he had theretofore borrowed in excess of $30,000 from cross-defendant Bank of America National Trust and Savings Association, and evidenced the same by a promissory note and secured it by a deed of trust on the property. He found he needed more money to complete the building and applied to the bank therefor. After negotiating with the officials of the latter for a while, the bank agreed to lend him the additional sum of $42,500, and pursuant thereto, on the date aforesaid, he made and executed a promissory note in words and figures as follows, to wit:

"42,500.00—Oakland, Calif., January 7, 1949.

"Six months after date hereof, for value received, I promise to pay in lawful money of the United States of America, to the order of the Bank of America National Trust & Savings Association at its Piedmont Avenue Branch in this city Forty-two Thousand Five Hundred and no/100ths Dollars with interest in lawful money from date thereof, at the rate of 5% per annum until paid, payable six months from date, and if said interest is not paid as it becomes due, it is to be added to the principal and becomes a part thereof, and thereafter bear interest at the same rate, and in case said interest, or any part thereof, be not paid within 10 days after the same becomes due and payable, the whole of said principal sum shall forthwith become due and payable at the option of the holder of this note.

"Deed of trust dated February 20, 1947, executed by John Stewart Roberts and recorded February 27, 1947, in Book 5061 of Official Records, Page 389, Alameda County Records secures the indebtedness evidenced by the note.

John Stewart Roberts."

---

*Assigned by Chairman of Judicial Council.

About three weeks after the maturity of the note, nothing having been paid thereon, the trustee under said deed of trust, after notice of default, noticed said property for sale. Whereupon in this action, originally begun by other parties, appellant by cross-complaint against the respondents Bank and Corporation of America, trustee in said deed of trust, sought to enjoin said sale and to have said note reformed so as to have it read and mean other than it did by its express terms. His position is succinctly set forth in Paragraphs 5, 6, and 7 of the first count of the amended cross-complaint and in count 3 thereof. Said paragraphs referred to are as follows:

"V

"That prior to the presentation of said promissory note, said cross-defendant and defendant had agreed that repayment of said Forty Two Thousand Five Hundred ($42,500.00) Dollars, and all other sums owing to said Bank of America National Trust & Savings Association, would be made from the specific revenue received from the property described in the deed of trust hereinabove mentioned in paragraph 2.

"VI

"That by the mutual mistake of defendant and said cross-defendant, or by the mistake of the defendant and the fraud of the cross-defendant, in concealing its knowledge thereof, said promissory note did not embody the actual agreement theretofore made as aforesaid, but said provision for such repayment was omitted.

"VII

"That defendant executed said written agreement in the belief that the same embodied the actual agreement theretofore made as hereinabove alleged."

The third count of the amended cross-complaint refers to the first six paragraphs of the first count thereof and adds the allegations that on or about December 3, 1948, during discussion of the execution of said note, defendant informed Mr. Edwards, vice-president of the Bank of America National Trust and Savings Association, that defendant could only pay the indebtedness incurred in the past and to be incurred in the future, out of the specific revenue from the real property which was the security for the repayment of said indebtedness; that said Edwards allowed appellant to believe that this source of revenue would be that from which the bank

would look to for the payment of said indebtedness; that appellant had no knowledge that the bank would demand payment of the note from any source other than that of the specific revenue to be received from the realty concerned. Appellant prayed that said note be reformed, the sale under the deed of trust be enjoined, and for a general relief.

The foregoing allegations were appropriately denied in the answer to the amended cross-complaint and thus the issues are clear cut. It should here be said that other points were originally raised by appellant, but we find there is no merit therein; and that they have been either expressly or impliedly abandoned by him.

In its findings the lower court found against appellant's contentions and adjudged the cross-complainant take nothing against the cross-defendants. The cross-complainant has appealed and has brought the matter before this court on a settled statement.

The sole issue for us to decide is whether or not the findings are supported by the evidence. We have examined the record in detail and have come to the conclusion the findings are amply supported. This being the case, we have no alternative other than to affirm the judgment.

■ Referring back now to the allegations contained in Paragraph 5 of the amended cross-complaint, which the court found not to be true, we can find no evidence in the record which sustains them. We are referred to pages 22, 23, and 24 of the settled statement as containing such evidence. All we find there, in this connection is, appellant stated to the bank representatives at a discussion between them relative to lending this money that the only way he could ever hope to have an equity in the building was to "stay in the act and pay out of income," but no comment was made by the representatives of the bank in regard thereto. On the other hand, B. F. Edwards, one of said bank representatives, testified he told appellant at that time it would be "out of the question" to pay off the loan, if made, out of the income. This witness also testified no one at that meeting, in his presence, told appellant the loan could be repaid out of the revenue from the property. In short, we find in the statement, no evidence of any such agreement, but we do find evidence from which it may well be concluded there was none.

■ Considering Paragraph 6 of the amended cross-complaint, we are pointed to no evidence and can find none, that the note was executed through mutual mistake or fraud. When

appellant went to the escrow holder title company, he read the note, understood it, and noted its maturity date was six months thereafter, questioned it, whereupon the escrow agent told him to "do what he wanted to, it was his business." He then went to the telephone, talked to his attorney Mr. Wallace, told the latter it was a six months note, and should he sign it? And the latter advised him to do so, and he would explain it to him later. Appellant also says Wallace told him at that time the bank would "remake the note every six months." He then went back to the counter and signed the note and left it with the escrow holder.

However, Mr. Wallace was a witness at the trial and he testified positively that at no time did he ever tell appellant the bank would renew or "remake" the note or that the bank had agreed to do so. Wallace also testified he never had any such agreement or understanding with the bank at any time. Without detailing it here, it is sufficient to say other witnesses testified there was no such agreement and that appellant was never told that such a plan was acceptable. Indeed, the only one appellant claims told him that was Wallace, and his own attorney, legal adviser and agent in this transaction. In addition to this, it is noted the appellant testified when his deposition was taken prior to the trial that he had never executed the note; at the trial he admitted he had.

Under all these circumstances, the court could well conclude, as it did, there was no basis for a finding that the bank misrepresented to, or concealed anything from, the appellant or that it was a party to any mistake, and consequently no fraud or mutual mistake had been proved.

The foregoing is likewise applicable to Paragraph 7 of the amended cross-complaint. The allegations appearing therein are, standing alone, insufficient to authorize the relief prayed for, and when taken with the other allegations appearing in the preceding paragraphs, the hereinabove observations are applicable thereto.

Also, the fact appellant took no action in regard to altering the note until two years later, and after he had been served with process herein, does not lend too much credence to the claim that he signed the note under any misapprehension as to the note's due date or when it would be payable.

Proceeding now to a consideration of the third count in the amended cross-complaint, we can find no evidence that the bank was responsible for any belief appellant may have had

that he would be permitted to pay off this note out of the specific revenue from the real property. Instances showing the bank told appellant it could not and would not lend him this money on such a basis has been hereinabove referred to. Mr. Edwards also made this plain to Mr. Wallace, plaintiff's attorney. Both he and Wallace so testified. There is no question of the relationship between Wallace and appellant. The latter testified at one time, "I had no discussion with Mr. Wallace concerning the note, the terms of repayment, or anything. I left it entirely to him." He also testified that when he talked to Wallace on the telephone, he said to Wallace, "All right, if you are satisfied with it that is perfectly all right with me."

The findings on this count have full and adequate evidentiary support.

From the foregoing it must be concluded that the evidence forms no basis for reformation of the note. (*Moore* v. *Vandermast,* 19 Cal.2d 94, 96-97 [119 P.2d 129]; *Ballard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10]; *Burt* v. *Los Angeles Olive Growers Assn.,* 175 Cal. 668 [166 P. 993].) Nor for equitable estoppel. (*Young* v. *Bank of America,* 88 Cal.App.2d 184, 186 [198 P.2d 543]; *McClain* v. *Bercut-Richards Packing Co.,* 64 Cal.App.2d 420, 425 [148 P.2d 907].)

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.